# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TARA PUCCINO, ET AL.,         :
       Plaintiffs,        :
                          :
v.                       :       3:09-cv-1551 (CFD)
                          :
SNET INFORMATION SERVICES,  :
INC.,                       :
        Defendant.        :

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiffs Tara Puccino, Tammy Sherwood, Michael Hawes, Carol Deaso, William Holodak, Laura Rosler, Katherine Winner, Christine Mieszkowski, John Thomas Richeson, Stephen Signor, and Tracy Sutcliffe (collectively, the "Plaintiffs") brought this action against defendant Southern New England Telephone Information Services, Inc. ("SNET"), alleging violations of Conn. Gen. Stat. § 31-72 (Count One); Breach of Oral Contract (Count Two); Unjust Enrichment (Count Three); Fraud, Deceit, and Intentional Misrepresentation (Count Four); Breach of Implied Covenant of Good Faith and Fair Dealing (Count Five); Quantum Meruit (Count Six); Violation of the Connecticut Unfair Trade Practices Act (Count Seven); and Promissory Estoppel (Count Eight). SNET has moved for summary judgment based on federal labor law preemption of Count One. For the reasons set forth below, the Court grants SNET's motion for summary judgment.

## I.    Factual Background[1]

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

-1-

The Plaintiffs are sales representatives for SNET and, as such, are bargaining unit employees and members of Local 1298 of the Communication Workers of America ("Union" or "Local 1298").  The Plaintiffs sell advertising space in various SNET telephone directories distributed to SNET customers, including the "Yellow Pages."  In April 2004, the Union and SNET entered into a collective bargaining agreement ("CBA") which governs the terms and conditions of the Plaintiffs' employment, including wages and commissions.  As stated in the CBA, the Union is "the exclusive bargaining agent for all [bargaining unit employees] for the purpose of negotiating with the Company relative to rates of pay, wages, hours and all other conditions of their employment."  The Union and SNET agreed that the purpose of the CBA is to "stipulate those items already fixed by mutual agreement, outline the method of procedure in approaching agreement on controversial questions and to secure prompt and fair disposition of alleged grievances."  Further, they agreed that "every effort possible will be made to reach mutually satisfactory conclusions on controversial matters."

Relevant Provisions of the CBA

The CBA covers the calculation and payment of wages and commissions to sales representatives, including the basis of compensation (salary and commissions), method of commission payment, assignment of accounts, commission advance recovery process, and reimbursement of expenses.  Specifically, Article XXIV of the CBA covers the "rates of pay, hours, and terms and conditions of employment" applicable to sales representatives.  Section 1 of Article XXIV provides for the payment of commissions to sales representatives for "Commissionable Business," which is preliminarily defined as "the monthly revenue value of the business accounts assigned to a Representative, accepted by the Company, published in each

applicable Company publication, and sold by a commissioned Representative."  Section 4 establishes detailed procedures for the assignment of accounts, including "New Business" accounts to sales representatives.  The methods for calculating commissions and reimbursable expenses are set forth in twenty-one pages of the CBA and involve complicated formulae, including calculations for "advancements" of commissions and reimbursement of those payments by the sales representatives.

The CBA also governs the grievance and arbitration of disputes between SNET and any of its employees or the Union.  Specifically, Article XIII governs any disagreement between SNET and its employees or the Union "as to the application, interpretation and administration of matters subject to the provisions of the [CBA]," and sets forth the grievance procedure.  After the employee completes all of the steps outlined in the grievance procedure, the Union, on the employee's behalf, may request arbitration as prescribed in Article XXI of the CBA.  Under this Article, "[t]he decision of any arbitrator, selected in accordance with Section 2, hereof, shall be final, and the parties agree to be bound and to abide by such decision."

The CBA also provides for resolution of future issues by SNET and the Union.  Although the CBA is "the full and complete agreement between the Company and the Union," it expressly contemplates that, during the term of the labor agreement, SNET and the Union will "meet to discuss matters of mutual interest."  From time to time, SNET and the Union have met to negotiate supplemental agreements, which are then incorporated into the CBA.  The "wages and working practices" may be changed through "negotiations and mutual agreement" by SNET and the Union through such procedures.  The CBA also provides for the negotiation of wage

schedules for "new job title[s]" or restructuring of existing job titles within the bargaining unit.[2]

The Hunter Agreement

In early 2007, SNET and the Union executed a memorandum of understanding known as the "Hunter Agreement."  The purpose of the Hunter Agreement was to encourage sales representatives to seek new customers.  Under the Hunter Agreement, approximately 20% to 30% of the advertising sales force would begin selling new business as "Hunters" while the remaining 70% to 80% would remain focused on servicing existing customers as "Farmers."  The Plaintiffs claim that SNET represented to them that acceptance of a "Hunters" position would be financially advantageous and that they would earn up to $144,000 per year.  One of the results of the creation of the "Hunters" was that many of the "Hunters'" previous accounts were to be assigned to the "Farmers."  The Hunter Agreement contained numerous provisions that adjusted the compensation formulae set forth in the CBA.

As part of the contract, the Union and SNET agreed that the Hunter Agreement would supersede the relevant language of the CBA.  They agreed that "[t]his memorandum has been negotiated and agreed to in good faith between [SNET] and [the Union] and supercedes any existing contract language with respects to any of the details outlined above.  This plan will be in effect for the 2007 Sales Cycle."[3]  Except as modified by the Hunter Agreement, the CBA provisions as to compensation were still in effect.

The Plaintiffs accepted SNET's offer becoming "Hunters," performed their jobs as

_____

[2] It is undisputed that the CBA applied to the time period of the events in this action.

[3] The Hunter Agreement was only in effect for the 2007 Sales Cycle, and is no longer in effect.  Apparently, it was an unsuccessful attempt to obtain new business.

"Hunters," and SNET paid them commissions based on the Hunter Agreement.  The Plaintiffs claim that subsequent to the payment of these commissions, SNET reneged on the Hunter Agreement and demanded that the Plaintiffs return certain commissions that had been advanced to them.  The Plaintiffs claim that they refused to return these commissions because they had properly earned them under the terms and conditions of the Hunter Agreement.  However, SNET began withholding money from their pay as "reimbursement."  The Plaintiffs contend that SNET had properly paid them their commissions according to the compensation structure established in the Hunter Agreement and later sought repayment of commissions properly earned.

"Hunter Grievances" and Arbitration of those Grievances

After the dispute arose regarding the pay structure under the Hunter Agreement, the Plaintiffs and the Union filed grievances concerning payment of commissions.  The Union then filed a demand for arbitration on each of the Plaintiffs' grievances (collectively referred to as the "Hunter Grievances") under the Labor Arbitration Rules of the American Arbitration Association.  In the demand for arbitration, the Union characterized the dispute as a "violation of Article 1, Section 2 and 'Hunter' Agreement" and sought an "adjustment to sales commissions to make whole all reps named in 'Hunter' grievances/or [with] 'Hunter' title."

On July 1, 2010, the Union, on the Plaintiffs' behalf, executed a Settlement Agreement and Full Release of All Claims (the "Settlement Agreement") with SNET, settling the Hunter Grievances.  The parties agreed that SNET "shall recover the balance of the amount drawn in advance of commissions" for each plaintiff, but "forgave" a set amount of advancements from commissions for each plaintiff.  The Settlement Agreement specifically permitted SNET to continue to deduct from future commissions those amounts which exceeded the set amount

forgiven.

The parties dispute whether this Settlement Agreement settled all of the Plaintiffs' claims against SNET, including the Plaintiffs' claim under Conn. Gen. Stat. § 31-72 in Count One for their earned commissions.  The Plaintiffs contend that the Settlement Agreement did not resolve that statutory claim, only their claims for violation of the CBA and Hunter Agreement. Regardless, the Settlement Agreement stated that it settled in full the individual grievances of all the Plaintiffs.  The Settlement Agreement stated: "the Union on behalf of each Hunter Representative hereby settles, fully releases, and forever discharges the Company from any and all claims under the Collective Bargaining Agreement and any other claims which may result from the incident giving rise to the grievances . . . [in] Violation of Hunter Agreement."  The Settlement Agreement further stated: "[i]t is understood and agreed by all parties hereto that the parties enter into this Settlement Agreement in the spirit of compromise, desiring to fully, finally and forever settle all claims and issues between them . . . ."  In addition, "[i]t is further understood that this Settlement Agreement constitutes acknowledgment of FULL RELEASE, ACCORD AND SATISFACTION OF ANY AND ALL CLAIMS relating to [the Hunter Grievances], whether known or unknown or whether presently pending or proposed against the Company."

Current Lawsuit

On April 22, 2009, the Plaintiffs brought an action against their alleged former employer, AT&T Corporation, in this Court pursuant to 28 U.S.C. §1332, which provides for jurisdiction based on diversity of citizenship.  On August 27, 2009, the Court granted AT&T Corporation's motion to substitute SNET for AT&T Corporation as the proper party defendant, thus depriving

the Court of diversity jurisdiction.  On September 2, 2009, the Court ordered the Plaintiffs to file

an amended complaint pleading facts sufficient to establish the Court's subject matter

jurisdiction and if the Plaintiffs failed to do so, the Court would dismiss the action without

prejudice.  On September 9, 2009, the Plaintiffs filed a notice of voluntary dismissal of their

complaint without prejudice and, on the same day, filed the same complaint against SNET in the

Connecticut Superior Court.  It is that complaint which ultimately became the basis for the

instant action.

      On September 30, 2009, SNET removed the case to this Court pursuant to 28 U.S.C. §§

1441 and 1446, and based on the Court's original jurisdiction pursuant to 28 U.S.C. § 1331.  On

November 6, 2009, SNET filed a motion to dismiss or, in the alternative, motion for summary

judgment, on the basis that all of the Plaintiffs' claims are preempted by federal labor law.[4]  In

response, on November 27, 2009, the Plaintiffs filed a notice of voluntary dismissal of Counts

Two through Eight of their complaint.  On February 21, 2011, SNET moved for summary

judgment, arguing that Count One of Plaintiffs' complaint, the Connecticut wage law claim, is

preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185,  because it

requires the Court to interpret the CBA, and the Union's settlement of Plaintiffs' grievances

resolved all the claims in this action.  SNET also requested that the Court dismiss Counts Two

through Eight of Plaintiffs' complaint *with* prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(B).  In

response, Plaintiffs argue that their statutory claims for unlawfully withheld wages under Conn.

Gen. Stat. § 31-72 are not preempted by the LMRA because Conn. Gen. Stat. § 31-72 provides

an independent statutory claim that does not require interpretation of the CBA, the Union's

_____

[4] Otherwise known as "towing the boat into the federal harbor and then sinking it."

settlement did not settle the Plaintiffs' statutory claims, and Counts Two through Eight should be dismissed *without* prejudice.

## II.   Discussion

### A.   Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994)).  Once the moving party has met its burden, in order to defeat the motion the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the non-moving party must be credited if a reasonable jury could credit it.  Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000).  "When reasonable persons, applying the proper legal

standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  <u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir. 2000).

        <u>B.</u>     <u>Preemption Pursuant to Section 301 of the LMRA</u>

        The U.S. Supreme Court has stated that, in some actions, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well pleaded complaint rule.'"  <u>Williams v. Comcast Cablevision of New Haven, Inc.</u>, 322 F. Supp. 2d 177, 181 (D. Conn. 2004) (citing <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393 (1987)).  The LMRA is a statute that has been found to provide such "complete preemption."  <u>El Paso Natural Gas Co. v. Neztsosie</u>, 526 U.S. 473, 484 n.6 (1999) (citing <u>Caterpillar</u>, 482 U.S. at 393).

        Section 301 of the LMRA provides that lawsuits for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  "Section 301 reflects the intent of Congress to create a uniform body of federal labor law to remedy such violations rather than leaving redress to inconsistent, state-specific rules."  <u>D'Amato v. S. Conn. Gas Co.</u>, Civ. Action No. 3:97 CV 838 (CFD), 2000 U.S. Dist. LEXIS 18960, at *8 (D. Conn. Sept. 8, 2000); <u>see also</u>  <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 209 (1985); <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 114 (2d Cir. 2003); <u>Wilhelm v. Sunrise Ne., Inc.</u>, 923 F. Supp. 330, 334 (D. Conn. 1995).  As a result, disputes over the terms in a collective bargaining agreement and the consequences of a breach of such an agreement must be resolved according to the LMRA.  <u>See</u> <u>D'Amato</u>, 2000 U.S. Dist. LEXIS 18960, at *9; <u>Wilhelm</u>, 923 F.

Supp. at 334 (citing <u>Allis-Chalmers</u>, 471 U.S. at 211).

"When resolution of a state-law claim depends upon interpretation of a collective bargaining agreement, the claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law." <u>Wilhelm</u>, 923 F. Supp. at 334 (citing <u>Allis-Chalmers</u>, 471 U.S. at 211). "But if a state-law claim can be resolved without interpreting the collective bargaining agreement, the claim is 'independent' of the agreement and is not preempted by § 301." <u>Id.</u> (citing <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405–06 (1988)). "For example, if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301." <u>Vera</u>, 335 F.3d at 115. "Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" <u>Id.</u> (citing <u>Lingle</u>, 486 U.S. at 413 n.12).

Thus, this Court must determine whether the Plaintiffs' Connecticut state law wage claims in Count One are independent of the rights established by the CBA and the Hunter Agreement or whether the claims are necessarily intertwined with the terms of such agreements. See <u>D'Amato</u>, 2000 U.S. Dist. LEXIS 18960, at *10; <u>Wilhelm</u>, 923 F. Supp. at 335 (citing <u>Allis-Chalmers</u>, 471 U.S. at 213).

The Plaintiffs allege that SNET improperly withheld payment of their wages, in violation of Conn. Gen. Stat. § 31-72.[5] SNET argues that the Plaintiffs' state law wage claims are

---

[5] Section 31-72 authorizes a civil action to collect a wage claim, fringe benefit claim or arbitration award "[w]hen any employer fails to pay an employee wages in accordance with provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in

preempted by section 301 of the LMRA because the claims require interpretation of the CBA and

the Hunter Agreement.  As mentioned above, and stated in a decision of this Court, "where the

resolution of a state law [claim] depends on an interpretation of the collective bargaining

agreement, the claim is pre-empted."  Local 1035, Int'l Bhd. of Teamsters v. Pepsi-Cola Allied

Bottlers, Inc., 83 F. Supp. 2d 301, 305 (D. Conn. 1999) (quoting Hawaiian Airlines, Inc. v.

Norris, 512 U.S. 246, 261 (1994)).  "However, 'the bare fact that a collective bargaining

agreement will be consulted in the course of state-law litigation plainly does not require the claim

to be extinguished.'"  Foy v. Pratt & Whitney Grp., 127 F.3d 229, 233 (2d Cir. 1997) (quoting

Livadas v. Bradshaw, 512 U.S. 107, 114 (1994)).

    Though the CBA is not specifically mentioned in the Plaintiffs' complaint, the allegations

center on the distribution of commissions, the structure of which is set forth in the CBA as

modified by the Hunter Agreement.[6]  Thus, the Court would be required to interpret the language

of those agreements to determine whether the plaintiffs were entitled to the commissions in

_____

accordance with section 31-76k or where an employee or a labor organization representing an
employee institutes an action to enforce an arbitration award . . . ."  Conn. Gen. Stat. § 31-72.
Section 31-71b provides, in relevant part, that "[e]ach employer . . . shall pay weekly all moneys
due each employee on a regular pay day . . . ."  Id. § 31-71b.  Section 31-71e provides that "[n]o
employer may withhold or divert any portion of an employee's wages," unless certain exceptions
are met.  Id. § 31-71e.

    [6] Specifically, the Plaintiffs allege that "subsequent to the payment of the commissions,
defendant *reneged on the agreement it entered* into with the plaintiffs and demanded that the
plaintiffs reimburse the defendant for certain commissions already paid.  Plaintiffs refused to pay
the defendant commissions that they had properly *earned under the terms and conditions of their
agreement* with the defendant.  Defendant went ahead and began to take monies out of the
plaintiffs' paychecks as 'reimbursement' for allegedly overpaid commissions made in the past.
Defendant continues to deduct approximately 30% of commissions being presently earned by the
plaintiffs as 'reimbursement' for commissions previously paid.  The commissions previously
paid by the defendant were paid correctly *per the compensation structure established by the
defendant*."  See Compl. ¶¶ 29–33 (emphasis added).

question and whether SNET's deductions from commissions for advancements were therefore

unlawful.  See Levy v. Verizon Info. Servs. Inc., 498 F. Supp. 2d 586, 598 (E.D.N.Y. 2007)

("[T]he court would have to analyze the language of the agreements to decide whether incentive

compensation was actually *earned* before deciding if wages were subsequently deducted in

violation of state law.").  The CBA and the Hunter Agreement expressly set forth the terms and

conditions of the Plaintiffs' compensation, including the payment and advancement of sales

commissions, the recovery of overpaid advances of commissions by SNET, and the assignment

of customer accounts.  The Court would need to determine whether SNET breached those

agreements, whether the plaintiffs "properly earned" commissions under the agreements, and

whether SNET was entitled to recover any overpaid commissions under the agreements.  This

type of analysis would involve "substantial interpretation" of the CBA and Hunter Agreement,

and therefore section 301 of the LMRA preempts the Plaintiffs' state law claims for wages and

benefits.  Ycaza v. CT Transit-Stamford Div., 289 F. Supp. 2d 180, 182 (D. Conn. 2003)

(holding that section 301 preempts plaintiff's claims for wages and benefits under Conn. Gen.

Stat. § 31-72); see also Vera, 335 F.3d at 116 (holding that plaintiff's claim for wages under New

York law was preempted by section 301 because "substantial analysis" of the CBA was

required); Levy, 498 F. Supp. 2d at 598 (holding that plaintiffs' claims for unlawful wage

deductions under New York, New Jersey, and Pennsylvania law were preempted by section 301

because they "substantially depend" on an interpretation of the terms of the CBA).

　　　　In Local 1035, International Brotherhood of Teamsters v. Pepsi-Cola Allied Bottlers, Inc.,

83 F. Supp. 2d 301, 306 (D. Conn. 1999), the U.S. District Court for the District of Connecticut

denied the defendant's motion to dismiss based on section 301 preemption because the plaintiffs'

state law overtime claims required little more than the need to refer to the schedule of wages rates set forth in the CBA.  In contrast, in the instant action, the Court would have to analyze the specific terms of the extensive compensation provisions of the CBA and the complicated modifications of those provisions as set forth in the Hunter Agreement, such as commissionable business, new business accounts, advancements of commissions, and recovery of advanced commissions, to determine whether the Plaintiffs earned the commissions they seek in this case. That effort is hardly the mere reference to a list of wage rates permitted in <u>Local 1035</u>.

It is true that the Settlement Agreement sets forth a list of advancements in set dollar amounts for each plaintiff.  It is also true that the set amount that was forgiven can easily and readily be subtracted from those amounts.  However, it is not that simple.  For those plaintiffs on the list whose advancements exceed the amount forgiven (and thus subject to future compensation reduction by SNET to repay those amounts), the commission formulae in the CBA and Hunter Agreement must be applied to determine whether commission amounts should have been higher so as to offset any recovery of the advancements by SNET.

The Plaintiffs further contend that their state law claims are not preempted because their Connecticut state law claims are independent of the CBA.  The Plaintiffs argue that their claims under Conn. Gen. Stat. § 31-72 stem from Conn. Gen. Stat. § 31-51bb.  "Conn. Gen. Stat. § 31-51bb expressly provides an employee access to the judicial process to redress violations of state or federal law despite the existence of a C.B.A., provided that the cause of action is not for the breach of, or dependent upon, any provision of the C.B.A."[7]  <u>Local 1035</u>, 83 F. Supp. 2d at 304.

---

[7] Conn. Gen. Stat. § 31-51bb states:

No employee shall be denied the right to pursue, in a court of competent

Section 31-51bb, however, applies only to causes of action "premised on an independent statutory claim." Genovese v. Gallo Wine Merchs., Inc., 226 Conn. 475, 481 (1993). Here, the state statute under which the Plaintiffs assert their claims, Conn. Gen. Stat. § 31-72, "does not create a substantive right in the plaintiff[s], but rather provides remedial protection in the event that the underlying contract between employer and employee for wages is violated." Ycaza, 289 F. Supp. 2d at 182; see also Mytych v. May Dep't Stores Co., 260 Conn. 152, 162 (2002) ("Our interpretation of § 31-72 supports the notion that the wage statutes, as a whole, do not provide substantive rights regarding *how* a wage is earned; rather, they provide remedial protections for those cases in which the employer-employee wage agreement is violated."). Because Section 31-72 does not "create independent substantive rights," the Plaintiffs' argument fails. Mytych, 260 Conn. at 162 (quoting Shortt v. New Milford Police Dep't, 212 Conn. 294, 309 (1989)). But cf. Levy, 498 F. Supp. 2d at 597 (finding that the plaintiffs' state law claims under New York, New Jersey, and Pennsylvania wage law were independent of the CBAs, but the claims were still preempted by section 301 because they substantially depended on an interpretation of the terms of the CBAs). Thus, Section 31-72 merely provides a remedy for an action based on a breach of a wage agreement between employer and employee. Mytych, 260 Conn. at 162. "The wage agreement is not dictated by statutes; instead, it is the integrity of that wage agreement that is protected by the statutory provisions." Id.

---

jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action . . . for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement.

-14-

C.      The Settlement Agreement

SNET also contends that the Settlement Agreement resolves all of the Plaintiffs' claims

in this case.  See Suissa v. Am. Exp. Lines, Inc., 507 F.2d 1343, 1347 (2d Cir. 1974); Delaney v.

LaHood, No. 07-CV-471, 2009 U.S. Dist. LEXIS 91293, at *47 n.11 (E.D.N.Y. Sept. 30, 2009).

The U.S. Court of Appeals for the Second Circuit has held that "settlement of a grievance by a

union and the employer is binding upon the individual employee, absent evidence that the union

has acted in bad faith in carrying out its duty of full and fair representation."[8] Suissa, 507 F.2d at

1347.  Here, the Settlement Agreement between the Union and SNET conclusively resolves the

Plaintiffs' grievances and any and all claims "relating to" those grievances.  The Settlement

Agreement resolves "any and all claims under the Collective Bargaining Agreement and any

other claims which may result from the incident giving rise to the grievances . . . [in] Violation of

Hunter Agreement."  In their statutory claims, Plaintiffs are seeking to recover the commissions

that they earned according to the compensation structure in the Hunter Agreement and the CBA.

They claim that SNET had paid them their earned commissions and then unlawfully withheld

money from their pay to recover some of those commissions in breach of the Hunter Agreement.

The Plaintiffs argue that the Settlement Agreement does not cover their statutory wage

claims under Connecticut state law because their statutory claims are independent of their

grievances under the CBA.[9]  The Court disagrees.  First, Plaintiffs claims "arise out of the

---

[8] The Plaintiffs have not alleged that the Union acted in bad faith in carrying out its duty of full and fair representation.

[9] The Plaintiffs rely on the affidavit of Patricia Telesco, a Union staff representative, in which she asserts that she "informed the Employers' agent, Dennis Morgan, that the Union did not have the authority, could not and was not waiving any statutory rights of the individual employees covered by the above-referenced grievance."  The Settlement Agreement, however,

incident giving rise to the grievances"—SNET's alleged breach of the Hunter Agreement—and therefore the Plaintiffs agreed to release such claims.  Second, Conn. Gen. Stat. § 31-72 does not set forth an independent statutory right; it provides a remedy for an action for breach of the collective bargaining agreement.  Mytych, 260 Conn. at 162.  Connecticut state courts and the U.S. District Court for the District of Connecticut have stated that this statute for collection of wages must coexist with the contractual submission of wage disputes to grievance procedures specified in the applicable collective bargaining agreements.  Shortt, 212 Conn. at 304; Local 1035, 83 F. Supp. 2d at 305.  Because the Settlement Agreement covers all claims "relating to" the Hunter Grievances and "any other claims which may result from the incident giving rise to" the Hunter Grievances, the Settlement Agreement covers the Plaintiffs' remedial wage claims under Conn. Gen. Stat. § 31-72 and the Court dismisses Count One on that basis as well.

      D.      Dismissal of Counts Two through Eight

      The Plaintiffs originally brought their eight-count complaint against AT&T Corporation. AT&T Corporation moved for the substitution of SNET as the party defendant.  The Court granted the motion because the Plaintiffs were employed by SNET, not AT&T Corporation, and ordered the Plaintiffs to file an amended complaint pleading facts sufficient to establish the Court's subject matter jurisdiction.  The Plaintiffs instead filed a notice of voluntary dismissal of their entire complaint without prejudice pursuant to Fed. R. Civ. P. 41(a)(1) and the Court

---

contains a clear integration, or merger, clause.  It states that the "Settlement Agreement represents the entire agreement between the parties and may not be varied by any prior or subsequent oral representations or understandings by any party."  It is well settled that "the unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence."  Alstom Power, Inc. v. Balcke-Durr, Inc., 269 Conn. 599, 610 (2004) (citation omitted).  Thus, Telesco's affidavit cannot contradict the broad terms of the release of "any and all claims" in the Settlement Agreement.

ordered the dismissal.  <u>See</u> Plaintiffs' Notice of Voluntary Dismissal from Case No. 3:09-cv-660 (CSH), Dkt. # 25.

  In the instant action, the Plaintiffs again filed a notice of voluntary dismissal of Counts Two through Eight without prejudice pursuant to Fed. R. Civ. P. 41(a)(1) (Dkt. # 24-5) in response to SNET's motion to dismiss or, in the alternative, for summary judgment (Dkt. # 17). SNET argues that the Court should dismiss Counts Two through Eight *with* prejudice because the Plaintiffs previously voluntarily dismissed these same counts in their prior federal court action and, thus, the Plaintiffs' second notice of dismissal should operate as an "adjudication on the merits."  <u>See</u> Fed. R. Civ. P. 41(a)(1)(B) ("But if the plaintiff previously dismissed any federal-or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.").

  The Court orders that the parties each submit a supplemental memorandum discussing whether the Court should dismiss Counts Two through Eight of the Plaintiffs' complaint with or without prejudice.

**III.** <u>**Conclusion**</u>

  Accordingly, the defendant's motion for summary judgment [Dkt. # 63] is GRANTED. The parties have fourteen (14) days to submit their supplemental memorandum to address whether Counts Two through Eight should be dismissed with or without prejudice.

  SO ORDERED this  30th  day of September 2011, at Hartford, Connecticut.

        /s/ Christopher F. Droney
       **CHRISTOPHER F. DRONEY**
       **UNITED STATES DISTRICT JUDGE**